# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

ADRIAN JOHNSON,

Plaintiff,

v.

AT&T INC.; AT&T MOBILITY LLC; and
FIRSTNET (FIRST RESPONDER NETWORK AUTHORITY),

Defendants.

Case No. _____

## VERIFIED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF,
## AND EMERGENCY TEMPORARY RESTRAINING ORDER

Plaintiff Adrian Johnson, proceeding pro se, brings this action against Defendants AT&T Inc., AT&T Mobility LLC (collectively 'AT&T'), and FirstNet (First Responder Network Authority), and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over claims arising under 47 U.S.C. § 202 (Communications Act), 11 U.S.C. § 366 (Bankruptcy Code utility service), 42 U.S.C. § 1981 (race discrimination), 42 U.S.C. § 12182 (Americans with Disabilities Act), and 47 U.S.C. § 1422 (FirstNet enabling statute).

2. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391 as the acts giving rise to this complaint occurred in this district and Plaintiff is an active Chapter 11 debtor in the United States Bankruptcy Court for the Eastern District of Missouri, Case No. 26-42479.

## II. PARTIES

3. Plaintiff Adrian Johnson is an individual and Chapter 11 bankruptcy debtor currently residing in St. Louis, Missouri. Plaintiff is Black, a transgender woman, and has gender dysphoria, a documented disability.

4. Defendant AT&T Inc. is a Delaware corporation doing business throughout the United States, including in Missouri and Minnesota. AT&T Mobility LLC is a subsidiary of AT&T Inc. and the licensed operator of the FirstNet network under federal agreement with the First Responder Network Authority.

5. Defendant FirstNet (First Responder Network Authority) is an independent authority within the National Telecommunications and Information Administration (NTIA), established by 47 U.S.C. § 1422, responsible for overseeing the nationwide public safety broadband network.

## III. FACTUAL BACKGROUND

### A. The Fraud Flag — Present from the First Day of Service

6. In January 2025, Plaintiff applied to open a personal wireless account with AT&T. Upon Plaintiff's initial attempt to open the account, AT&T's systems immediately flagged Plaintiff for fraud — before any adverse history, before any missed payment, and before any financing was extended. Plaintiff had presented a valid government-issued identification and sought to activate an unlocked, fully paid-for phone. There was no legitimate fraud basis for the flag at account inception.

7. To open the account, Plaintiff was required to complete an additional identity submission process — fill out a form and submit identification separately — beyond what AT&T requires of ordinary customers. Only after completing this additional process was the account opened.

8. From the moment the account opened, Plaintiff's identity was established, verified, and on file with AT&T. The account was opened in good standing.

### B. Recurring Fraud Flags on an Active, Current Account

9. Despite having an active account in good standing, Plaintiff encountered repeated fraud flags when attempting to make ordinary account modifications:

10. When Plaintiff attempted to activate a paid-for Apple Watch on the existing account, AT&T's fraud systems flagged the request. Plaintiff spent approximately two days attempting to complete the activation across multiple calls. The activation was eventually approved, but only after significant delay and friction not experienced by ordinary customers.

11. When Plaintiff attempted to activate an insurance replacement device on the existing account, AT&T's fraud systems again flagged the request. Again, the request was eventually approved after repeated attempts.

12. On both occasions, AT&T refused to disclose what reports or data sources it was using to generate the identity verification questions. On multiple occasions, AT&T's identity verification

questions contained factual errors — asking about information that did not apply to Plaintiff — further demonstrating that the fraud flag was not based on accurate or legitimate data.

### C. BMW ConnectedCar and the First FCC Complaint

13. Plaintiff subsequently transitioned to AT&T FirstNet service. When Plaintiff attempted to connect Plaintiff's BMW vehicle to the AT&T network through AT&T's application, the system repeatedly returned error messages and would not complete the connection. The connection could not be completed by phone either; AT&T's representatives stated it could only be done through the app, which did not function for Plaintiff's account.

14. Plaintiff filed a first complaint with the Federal Communications Commission regarding AT&T's failure to connect the BMW to the network.

15. In response, AT&T's Office of the President contacted Plaintiff and conducted an identity verification review. During this process, some identity questions were again factually incorrect. Nevertheless, the Office of the President verified Plaintiff's identity and connected the BMW — but only to the AT&T Connected Car platform, not to the FirstNet network. AT&T's Office of the President stated it could not resolve the FirstNet connection issue.

### D. Second FCC Complaint — FirstNet BMW Connection Refused

16. Plaintiff filed a second FCC complaint regarding AT&T's refusal to connect the BMW to FirstNet specifically, despite the vehicle being connected to AT&T's standard network.

### E. The Abrupt Disconnection — AT&T's Retaliatory Response

17. Shortly after Plaintiff's second FCC complaint, and while Plaintiff maintained multiple active AT&T accounts — including AT&T wireless service, an AT&T All-Fi Hub mobile internet device, and an AT&T Netgear Nighthawk device on an approved financing agreement — AT&T abruptly and fully disconnected Plaintiff's phone line without prior notice or warning.

18. AT&T did not transition Plaintiff to alternative service. AT&T did not provide any explanation. AT&T simply disconnected the line. Plaintiff called AT&T approximately thirty times seeking reconnection to standard AT&T service. AT&T refused to reconnect Plaintiff on any standard plan across all channels.

19. AT&T's own policy provides that a customer whose service cannot be continued on one plan is transitioned to an available alternative plan — not fully disconnected. AT&T did not follow this policy for Plaintiff. The complete disconnection, contrary to AT&T's own transition policy, was not a legitimate account action. It was retaliatory.

20. Plaintiff filed a third FCC complaint regarding the total disconnection of service.

### F. The Grandfather Plan — Restoration in a Deliberately Degraded Form

21. In response to the third FCC complaint, AT&T restored Plaintiff's service — but only to a legacy Nation 450 with Rollover grandfather plan at $44.99 per month. This plan provided only 450 voice minutes with no data access and no text messaging, rendering the phone essentially unusable for any modern purpose. AT&T's own application reflects this plan as 'Upgrade-ready' and prompts the account holder to call AT&T to choose a new plan — confirming AT&T's own systems recognize the plan as inadequate — yet AT&T simultaneously refused to actually make that change.

22. Simultaneously with placing Plaintiff on the grandfather plan, AT&T restricted Plaintiff's online account entirely. Plaintiff could not access account management functions online. Plaintiff could not reach AT&T's Office of the President through any channel. AT&T had not only degraded Plaintiff's service but locked Plaintiff out of every avenue to contest or remedy it. AT&T's representatives, when reached by phone, stated that once an account is on the grandfather plan, it cannot be changed. Plaintiff called AT&T approximately thirty times attempting to restore functional service. Every call resulted in the same answer: nothing could be done.

23. Plaintiff was left with no functional choice but to port the number to T-Mobile. This port was not voluntary — it was compelled by AT&T's deliberate refusal to restore functional service and its simultaneous lockout of every channel through which Plaintiff could seek relief.

24. During this same period, the Netgear Nighthawk device financed through AT&T was stolen. Plaintiff was unable to file an insurance claim and continued to be billed for the device despite the theft.

### G. Post-Bankruptcy Filing — Escalated and Unconditional Denial

25. On October 30, 2025, Plaintiff filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the Eastern District of Missouri, Case No. 26-42479. AT&T is a listed creditor in Plaintiff's bankruptcy schedules.

26. Following the bankruptcy filing, AT&T's denial of service to Plaintiff escalated from a pattern of repeated obstacles and eventual approval to a pattern of flat, unconditional denial with no process, no explanation, and no remedy offered:

27. When Plaintiff attempts to apply for service online, the application is automatically cancelled immediately upon submission. There is no review. There is no denial letter. The application simply disappears.

28. When Plaintiff applies for service in an AT&T retail store, Plaintiff's government-issued identification is flagged for fraud automatically upon the initial ID scan — before any application is submitted, before any Social Security number is entered, and before any credit or fraud data is run. The flag fires on the scan alone. A fraud-scoring algorithm cannot operate before any data is submitted; a flag that fires before any data exists is a pre-loaded identity-level watchlist entry, not a risk assessment.

29. This in-store flag has occurred across multiple AT&T retail locations in both Minnesota and Missouri, across multiple valid government-issued identification documents (a Minnesota ID and an Iowa ID). The flag is not location-specific, state-specific, or document-specific. It is attached to Plaintiff's identity.

30. AT&T's fraud department denies Plaintiff's applications. AT&T store personnel cannot override the denial. Online applications cancel automatically. Every channel and every location produces the same result: denial, with no explanation, no reason, and no information about what is triggering the flag or what reports are being used.

**H. The Identity Contradiction — AT&T's Own Systems Approve the Same Identity**

31. While AT&T's fraud systems flag Plaintiff's identity for personal wireless service at every channel, the identical identity, Social Security number, and credentials clear AT&T's verification for other products without issue:

32. Plaintiff maintains an active AT&T Fiber internet account with a zero balance and a perfect payment history. AT&T's systems verified Plaintiff's identity to open and maintain this account without any fraud flag.

33. Plaintiff maintains an active AT&T Business Cellular account with a zero balance and a perfect payment history. AT&T's systems verified Plaintiff's identity to open and maintain this account without any fraud flag. Plaintiff successfully activated an unlocked iPhone via eSIM on this business account using the identical government-issued identification — the scan was approved and the eSIM activated instantly with no fraud flag.

34. The same identity that activates an eSIM instantly on the business account flags automatically before any application is submitted on personal wireless. The same identity that maintains two active AT&T accounts in perfect standing is denied personal wireless service with no explanation. The same identity cannot be simultaneously legitimate for one product and fraudulent for another. There is no fraud-prevention rationale that clears an identity for higher-value services (fiber, business cellular) while blocking it for a single personal wireless line. The contradiction is irreconcilable on any legitimate basis.

35. AT&T's Office of the President previously verified Plaintiff's identity and lifted a fraud block to permit the BMW ConnectedCar connection. AT&T's own executive office thus confirmed on the record that Plaintiff's identity is legitimate — while the identity-level fraud block remained active on personal wireless and was never removed.

**I. Gender and Race Discrimination**

36. Plaintiff is a Black transgender woman. Plaintiff has gender dysphoria, a condition that substantially limits one or more major life activities.

37. On a prior occasion, an AT&T manager disclosed to Plaintiff that AT&T's Global Fraud department denied Plaintiff's application on the basis that Plaintiff was 'alleging to be a woman who sounds like a man,' using Plaintiff's voice and gender presentation as the stated basis to question Plaintiff's identity.

38. On June 13, 2026, an AT&T Global Fraud representative identified as 'Veronica' reviewed Plaintiff's application. The representative asked only Plaintiff's name, asked no fraud-related or identity-verification questions, denied the application, refused to provide any reason after two requests, and disconnected the call. The representative referred to Plaintiff as 'sir' without inquiry.

39. AT&T's automated systems approve Plaintiff's identity for AT&T Fiber and AT&T Business Cellular but deny Plaintiff's personal wireless applications through discretionary human review in the fraud department. A discretionary denial with no stated reason, no fraud inquiry, and no legitimate basis — applied to a verified applicant whose identical credentials clear automatically for other products — reflects discrimination based on Plaintiff's race, sex, gender identity, and disability.

**J. Section 366 — Bankruptcy Utility Service Denial**

40. Plaintiff is an active Chapter 11 bankruptcy debtor. AT&T is a listed creditor. 11 U.S.C. § 366 prohibits a utility from discontinuing or refusing service to a debtor after a bankruptcy petition is filed, absent a court-authorized adequate-assurance determination. AT&T has not sought relief from the bankruptcy court. AT&T has not requested adequate assurance. Since the October 30, 2025 bankruptcy filing, AT&T has denied Plaintiff service with no process and no court authorization.

## IV. CAUSES OF ACTION

**COUNT I: 47 U.S.C. § 202 — Unreasonable Discrimination in Telecommunications Service**

41. Plaintiff incorporates all preceding paragraphs.

42. AT&T is a common carrier subject to 47 U.S.C. § 202, which prohibits unjust or unreasonable discrimination in the provision of telecommunications services. AT&T has applied a pre-loaded identity-level fraud flag to Plaintiff's government-issued identification across all channels and locations, blocking personal wireless service while clearing the identical identity for AT&T Fiber, AT&T Business Cellular, and eSIM activation. This selective, product-specific, identity-level block constitutes unreasonable discrimination in violation of § 202.

**COUNT II: 11 U.S.C. § 366 — Utility Service Denial During Bankruptcy**

43. Plaintiff incorporates all preceding paragraphs.

44. AT&T is a utility as defined under § 366. Plaintiff is an active bankruptcy debtor. AT&T has refused to provide utility service since the bankruptcy filing without seeking court authorization and without requesting adequate assurance. AT&T's refusal constitutes a willful violation of § 366, entitling Plaintiff to actual damages, punitive damages, and contempt sanctions.

**COUNT III: Retaliation — Improper Disconnection Following FCC Complaints**

45. Plaintiff incorporates all preceding paragraphs.

46. AT&T abruptly and fully disconnected Plaintiff's service without notice following Plaintiff's FCC complaints, contrary to AT&T's own policy of transitioning customers to alternative service rather than disconnecting them entirely. AT&T refused to reconnect Plaintiff to any standard

plan across approximately thirty attempts. AT&T restored service only in a deliberately degraded form — a grandfather plan with no data or text — only after the third FCC complaint and regulatory pressure. This conduct constitutes unlawful retaliation against a consumer exercising federal complaint rights.

## COUNT IV: 42 U.S.C. § 1981 — Race Discrimination

47. Plaintiff incorporates all preceding paragraphs.

48. Plaintiff is Black. § 1981 guarantees all persons the same right to make and enforce contracts regardless of race. AT&T's discretionary, no-explanation denials — applied to a verified customer in good standing whose identical credentials clear for other AT&T products — deny Plaintiff the same right to contract for telecommunications service enjoyed by others, in violation of § 1981.

## COUNT V: Sex and Gender Discrimination

49. Plaintiff incorporates all preceding paragraphs.

50. AT&T's Global Fraud department used Plaintiff's voice and gender presentation as the stated basis to question Plaintiff's identity and deny service, as disclosed by an AT&T manager. Using a person's voice, gender presentation, or transgender status to question identity and deny telecommunications service constitutes unlawful sex and gender discrimination, including discrimination based on gender identity and nonconformity with sex stereotypes, in violation of applicable federal and state anti-discrimination law and the non-discrimination requirements of 47 U.S.C. § 202.

## COUNT VI: Americans with Disabilities Act — 42 U.S.C. § 12182

51. Plaintiff incorporates all preceding paragraphs.

52. Plaintiff has gender dysphoria, a condition that substantially limits one or more major life activities and constitutes a disability under the ADA. AT&T used characteristics arising from Plaintiff's disability — specifically Plaintiff's voice presentation — as the stated basis to deny service. This constitutes disability discrimination in violation of 42 U.S.C. § 12182.

## COUNT VII: 47 U.S.C. § 1422 — FirstNet Enabling Statute

53. Plaintiff incorporates all preceding paragraphs.

54. AT&T operates the FirstNet network under federal contract. Defendant FirstNet/NTIA has an obligation to ensure AT&T's compliance with the FirstNet operating agreement. AT&T's pattern of manufactured barriers to service — including the denial of FirstNet BMW ConnectedCar integration to a verified subscriber — implicates AT&T's federal obligations under the FirstNet operating agreement and NTIA's oversight responsibility.

## V. IRREPARABLE HARM AND BASIS FOR EMERGENCY TRO

55. Plaintiff is an active bankruptcy debtor whose reorganization prospects and business operations are directly impaired by AT&T's refusal to provide service. Plaintiff's ability to communicate, conduct business, and administer the bankruptcy estate is compromised daily. Money damages alone are insufficient to remedy the ongoing denial of telecommunications service. Injunctive relief is necessary.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff Adrian Johnson respectfully requests this Court:

A. Issue an Emergency Temporary Restraining Order requiring AT&T to immediately provision personal wireless service to Plaintiff;

B. Issue a Preliminary and Permanent Injunction prohibiting AT&T from refusing service to Plaintiff and requiring removal of the identity-level fraud flag from all AT&T systems;

C. Award actual and compensatory damages for all periods of wrongful service denial;

D. Award punitive damages for willful and repeated violations;

E. Award damages under 11 U.S.C. § 366 for utility service denial during bankruptcy;

F. Award compensatory and punitive damages for race discrimination, sex and gender discrimination, and disability discrimination, including damages for dignitary harm and emotional distress;

G. Order AT&T to remove the identity-level fraud flag from Plaintiff's government-issued identification across all AT&T systems;

H. Order FirstNet/NTIA to investigate AT&T's compliance with the FirstNet operating agreement;

I. Award attorneys' fees and costs; and

J. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____

Adrian Johnson, Plaintiff Pro Se

812 S Theresa Ave 315

St Louis, MO 63103

Date: 06/15/2026

475-261-3946

myalove612@icloud.com

**VERIFICATION**

I, Adrian Johnson, declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in the above-captioned action, that I have read the foregoing Complaint, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief, except as to matters stated on information and belief, and as to those matters I believe them to be true.

/s/ Adrian Johnson

_____

Adrian Johnson        Executed on 06/15/2026 at. St. Louis, MO

**EXHIBIT LIST**

Exhibit A: AT&T FCC Response (Office of the President), File No. 7991704, dated August 14, 2025

Exhibit B: AT&T Personal Account — Nation 450 with Rollover Plan Screenshot

Exhibit C: AT&T Fiber Account — Active / Zero Balance

Exhibit D: AT&T Business Cellular Account — Active / Zero Balance

Exhibit E: T-Mobile First Responder Verification Screenshot (Account #209080343)

Exhibit F: Alex Kappelmann (AT&T FirstNet Solution Consultant) Email Thread, March 19, 2026

Exhibit G: American Red Cross Volunteer Connection Profile — Adrian Johnson, Member #18410356

[Additional exhibits to be identified through discovery]